Argued and submitted November 4, 2015, affirmed November 9, 2016, petition for review denied March 30, 2017 (361 Or 311)

DELBERT E. EBY, JR.,
aka Dale Earl Eby,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent, Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
11C14164; A154846

386 P3d 224

Jason L. Weber argued the cause for appellant. With him on the brief was O'Connor Weber LLP.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Lagesen, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

## LAGESEN, P. J.

Petitioner appeals from a judgment denying his petition for post-conviction relief. On review for legal error, accepting as true the trial court's supported factual findings, *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015), we affirm.

Petitioner seeks relief from his conviction for second-degree assault, ORS 163.175(1)(b).[1] Petitioner was convicted of that felony—and other offenses—after he kicked his girlfriend severely and repeatedly; he was sentenced to 120 months' incarceration for that conviction. For his beating of his girlfriend, the state had originally charged petitioner by information with, among other things, fourth-degree assault under ORS 163.160(1)(a),[2] a misdemeanor. At the same time, petitioner also was charged with assault and other offenses in connection with an altercation involving an elderly female relative. After petitioner rejected a global plea deal that would have resolved all charges with respect to both victims, the state obtained a dismissal of the information and petitioner was indicted by a grand jury of felony assault for the beating of his girlfriend, as well as other offenses. The elevation of the initial fourth-degree assault charge from a misdemeanor to the felony of which he was convicted was based on the fact that petitioner had been wearing cowboy boots at the time that he kicked his girlfriend. The state alleged that the way in which defendant used his boots rendered them a "dangerous weapon," as that term is defined in ORS 161.015, making the assault a felony. *See State v. Bell*, 96 Or App 74, 77, 771 P2d 305 (1989), *rev den*, 308 Or 142 (1989) (holding that cowboy boots can be

---

[1] ORS 163.175(1) provides, in part:

"A person commits the crime of assault in the second degree if the person:

"* * * * *

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]"

[2] ORS 163.160(1) provides, in part:

"A person commits the crime of assault in the fourth degree if the person:

"* * * * *

"Intentionally, knowingly or recklessly causes physical injury to another[.]"

dangerous weapons under ORS 161.015, depending on how they are used).

Petitioner now contends that he is entitled to post-conviction relief from the felony assault conviction[3] on the ground that his lawyer was constitutionally inadequate and ineffective, in violation of petitioner's rights under Article I, section 11, of the Oregon Constitution,[4] and the Sixth Amendment to the United States Constitution,[5] for not having petitioner plead guilty to the assault charge while it was still charged as a misdemeanor.[6] Petitioner asserts that he told his lawyer that he wanted to plead guilty to the assault charge while it was still charged as a misdemeanor and that, had his lawyer followed through with his wishes, his plea to the misdemeanor would have caused jeopardy to attach, barring the state from charging petitioner with the felony. *See State v. Traylor*, 62 Or App 220, 225, 660 P2d 690 (1983) ("The trial court was correct in holding that jeopardy attached at the time defendant's guilty plea was accepted."). That, in turn, would have resulted in petitioner serving a significantly shorter sentence for the assault on his girlfriend—a maximum of 365 days. His lawyer's failure to implement this scheme, petitioner argues, amounts to a violation of his rights under Article I, section 11, and the Sixth Amendment.

The post-conviction court denied relief. It found that petitioner had not demonstrated any deficiency in counsel's performance for failing to pursue that strategy. It also found, among other things, that petitioner would not have succeeded in that strategy because, had petitioner attempted it, the prosecutor likely would have obtained a dismissal of the misdemeanor charge to pursue the felony charge:

"The DA would have told the court of his intent to charge the felony assault and would have just dismissed rather

---

[3] Petitioner does not seek relief from any other conviction.

[4] Article I, section 11, states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel."

[5] The Sixth Amendment states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

[6] On appeal, petitioner does not challenge the post-conviction court's denial of relief on alleged additional grounds.

than be barred from that felony. It is also highly unlikely that a judge would have allowed the assault IV plea if it barred the felony. *** The court has discretion to refuse the plea or just set it all over until the DA has time to indict."

Based on that finding, the post-conviction court concluded that petitioner had not established that he was prejudiced by any deficiency in counsel's performance.

Petitioner challenges that determination on appeal, arguing that the post-conviction court erred both in determining that counsel was not deficient for implementing petitioner's strategy of pleading guilty to the assault while it was a misdemeanor, and in determining that trial counsel's deficient performance did not prejudice petitioner. *See Pereida-Alba v. Coursey*, 356 Or 654, 661-62, 342 P3d 70 (2015) (explaining that the two elements of claim for inadequate assistance of counsel under Article I, section 11, are deficient performance and prejudice); *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (holding that the two elements of claim for ineffective assistance of counsel under the Sixth Amendment are deficient performance and prejudice); *see also Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2014) (concluding that the elements of an Article I, section 11, claim of inadequate assistance of counsel are "functionally equivalent" to the elements of a Sixth Amendment claim of ineffective assistance of counsel). In response, defendant, Superintendent of the Oregon State Penitentiary (the superintendent), contends that the post-conviction court's decision was correct in both respects.[7] We conclude that the post-conviction court correctly determined that petitioner was not prejudiced by the alleged deficiency in counsel's performance and, for that reason, affirm the judgment of the post-conviction court without addressing the performance element of petitioner's claim.

---

[7] The superintendent has not disputed that the right to counsel under Article I, section 11, and the Sixth Amendment, applies to sequential proceedings such as those at issue in this case and, in particular, has not disputed that a deficiency in counsel's performance in the dismissed misdemeanor proceeding could provide grounds for relief from a conviction resulting from the subsequently-charged felony proceeding. For that reason, we assume without deciding that petitioner's constitutional rights to counsel apply in such a way that his claim is cognizable, and address the claim on its merits.

As to prejudice, where, as here, a petitioner claims that his trial lawyer's deficient performance caused him to forgo a favorable plea, the United States Supreme Court has held that the petitioner must show that, but for counsel's deficiency, there is a reasonable probability that (1) the petitioner would have pleaded guilty; (2) the plea would have been accepted by the trial court; and (3) the plea would have resulted in a more favorable disposition of the case than the one the petitioner received. *Lafler v. Cooper*, 566 US 156, 132 S Ct 1376, 1391, 182 L Ed 2d 398 (2012); *Missouri v. Frye*, 566 US 133, 132 S Ct 1399, 1409-10, 182 L Ed 2d 379 (2012). Although neither we nor the Oregon Supreme Court has addressed whether the same standard governs the prejudice inquiry under Article I, section 11, on a claim that trial counsel's deficiency caused a petitioner to miss out on a favorable plea, that is the standard that petitioner argued to the post-conviction court and in his opening brief to us, and the superintendent does not appear to advocate for a different standard. For that reason, we treat the *Lafler/Frye* prejudice as applicable to petitioner's Article I, section 11, claim and his Sixth Amendment claim.[8]

The parties' arguments on appeal center primarily on the first and second parts of that required showing: Whether there is a reasonable probability that petitioner, in fact, would have pleaded guilty to the misdemeanor charge and, if so, whether there is a reasonable probability that the trial court would have accepted the plea. As it turns out, the latter point is dispositive of this appeal. As to that point, petitioner does not appear to dispute the post-conviction court's

[8] After briefing was complete, petitioner submitted a memorandum of additional authorities citing to the Oregon Supreme Court's decision in *Green*, and suggesting that it supplies the standard for assessing whether petitioner was prejudiced by any deficiency in trial counsel's performance. But the Supreme Court indicated in *Green* that its formulation of the prejudice standard in that case, which involved a claim challenging counsel's performance in a jury trial, might not apply to a claim challenging counsel's performance in connection with the plea process, *see Green*, 357 Or at 323, 323 n 13, and petitioner has presented no developed argument as to why or how the *Green* standard should apply in the plea context, or as to how the *Green* standard might differ in application from the *Lafler/Frye* standard in the plea context. Given the absence of developed arguments on those points, we decline to assess how, if at all, the *Green* standard applies or would call for a different analysis than the *Lafler/Frye* standard, which is the standard that petitioner otherwise has advocated throughout this case.

factual findings that, had petitioner attempted to enter a guilty plea to the assault charge while it was charged as a misdemeanor, the prosecutor would have sought dismissal of the charge, and it is unlikely that the trial court would have accepted the plea when faced with the prosecutor's request. In any event, those factual findings are supported by the evidence in the record.[9]

Rather, petitioner's argument as to whether the trial court likely would have accepted a plea, as we understand it, is a legal one. Petitioner contends that, if he had sought to plead guilty to the assault while it was charged as a misdemeanor, the trial court would have been compelled to accept his plea, regardless of whether the prosecutor indicated that she wanted to dismiss the charge to pursue a felony charge. In support of that argument, petitioner points to case law recognizing that a criminal defendant generally has a right to plead guilty to a charged offense. *See, e.g., State v. Wagner*, 305 Or 115, 130-31, 752 P2d 1136 (1988), *vac'd on other grounds sub nom Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989) (noting that criminal defendants generally have the right to plead guilty to charged offenses). Petitioner also points to ORS 135.335.[10]

---

[9] Specifically, the record contains a declaration from the prosecutor stating that she would have sought to indict petitioner on the felony once he had rejected the global plea deal if petitioner indicated that he would plead guilty to the misdemeanor assault. The record also reflects that the trial court in petitioner's criminal case did, in fact, permit the prosecutor to dismiss the information and pursue the felony charge. That evidence permits the inference that, had petitioner attempted his strategy, the trial court simply would have permitted the prosecutor to dismiss the charges, and would not have accepted petitioner's plea.

We note further that the post-conviction court's finding that the trial court likely would not have accepted petitioner's plea under those circumstances is consistent with our own past statements suggesting that it would be contrary to the public interest for a trial court to accept a guilty plea to a lower charge when the prosecutor represents to the court that the state intends to pursue a felony charge. *State v. Wadekamper*, 68 Or App 750, 753, 683 P2d 168 (1984) (stating that "it was no part of [the trial court's] office to accept a plea to [a] lesser charge and thereby frustrate the public's interest in complete law enforcement," where state represented at plea hearing that it intended to charge the defendant with a felony for the same conduct).

[10] ORS 135.335 provides, in pertinent part:

"(1) The kinds of plea to an indictment, information or complaint, or each count thereof, are:

"(a) Guilty.

He notes in particular that ORS 135.335(2) provides that a defendant must obtain the consent of the court to enter a "no contest" plea and reasons that the absence of a similar consent requirement for guilty pleas means that a trial court has no authority to reject a guilty plea, provided that it is knowing, voluntary, and supported by a factual basis. In other words, according to petitioner, whether or not to accept a guilty plea is not a matter of discretion for the trial court.

In response, the superintendent does not dispute that, as a general matter, a criminal defendant has an unqualified right to plead guilty to pending charges, subject to the requirements that a plea be knowing, voluntary, and supported by a factual basis. However, the superintendent points out that ORS 135.755 gives a trial court the express authority to *dismiss* pending charges when doing so is "in furtherance of justice": "The court may, either of its own motion or upon application of the district attorney, and in furtherance of justice, order the proceeding to be dismissed." ORS 135.755. Thus, the superintendent contends, a trial court presented simultaneously with a defendant's request to plead guilty and a prosecutor's motion to dismiss the charges—which is what the post-conviction court found would have happened if trial counsel had pursued petitioner's strategy—has the discretionary authority under ORS 135.755 to dismiss the charges if that is what justice requires. Accordingly, the superintendent argues, the post-conviction court did not err in its conclusion that petitioner likely would not have succeeded in having the court accept his guilty plea, and its corresponding conclusion that petitioner had not demonstrated that he was prejudiced by the alleged deficiencies in trial counsel's performance.

We agree with the superintendent. We have been unable to locate authority for the proposition—either in Oregon or elsewhere—that a defendant has an unqualified

---

"(b)  Not guilty.

"(c)  No contest.

"(2)  A defendant may plead no contest only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."

right to plead guilty to a charge that a prosecutor simultaneously is seeking to dismiss to pursue different or greater charges. Moreover, ORS 135.755 unambiguously confers upon a trial court the authority to dismiss the charges against a criminal defendant "in furtherance of justice" upon the request of the prosecutor. Nothing in its text or context suggests that the legislature intended that a defendant's request to enter a plea would preclude a trial court from exercising that authority if the court determines that it is appropriate to do so in the interest of justice. Had the legislature intended to include such a limitation on a trial court's dismissal authority, we think that it would have done so in express terms; it is not our role "to insert what has been omitted" from the statute. ORS 174.010; *State v. Dickerson*, 356 Or 822, 832, 345 P3d 447 (2015) (declining to interpret statute "to include a limitation that does not appear in its plain text").

Thus, contrary to petitioner's argument, ORS 135.755 would have allowed the trial court to dismiss the misdemeanor charge against petitioner, rather than accept his plea and, beyond that, the evidence supports the trial court's factual finding that that likely is what would have happened if petitioner attempted to plead guilty to the charge when it was a misdemeanor. Consequently, the post-conviction court correctly concluded that petitioner did not demonstrate a reasonable probability that his plea would have been accepted had his trial counsel pursued petitioner's strategy and that, therefore, petitioner failed to demonstrate prejudice under the *Lafler/Frye* standard. For that reason, we affirm the judgment of the post-conviction court.

Affirmed.